# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| United States of America | ) |
| | ) |
| v. | ) Case No. 17-450MJ |
| Eric Stacy Todd, | ) |
| USC | ) |
| *Defendant* | ) |

## CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief.

### Count 1:

On or about October 22, 2017, at or near Eloy, in the County of Pinal, in the District of Arizona, Eric Stacy Todd, knowing and with reckless disregard of the fact that certain aliens, Javier DeJesus-Gasper and Joaquini Guerro-Eugeno, had come to, entered, and remained in the United States in violation of law, did transport and move said aliens within the United States by means of transportation and otherwise, in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

### Count 2:

On or about October 22, 2017, at or near Eloy, in the County of Pinal, in the District of Arizona, Eric Stacy Todd, did aid and abet certain aliens to evade and elude examination and inspection by Immigration Officers of the United States of America; in violation of Title 8, United States Code, Section 1325(a)(2) and Title 18, United States Code, Section 2.

**See Attached Statement of Probable Cause Incorporated By Reference Herein.**

REVIEWED BY: AUSA Natalie Huddleston

_____
Signature of Complainant
Albert A. Martinez
U.S. Border Patrol Agent

Sworn to before me and subscribed in my presence, this 23rd day of October, 2017.

_____
Signature of Judicial Officer
Honorable Michelle H. Burns
United States Magistrate Judge

## STATEMENT OF PROBABLE CAUSE

I, Albert A. Martinez, being duly sworn, hereby depose and state as follows:

1. Your affiant is a Border Patrol agent with U.S. Border Patrol, U.S. Customs and Border Protection. I have learned about this investigation and the facts contained therein from direct participation in the investigation and from the reports and communications of other age.

2. On October 22, 2017, Border Patrol Agent (BPA) M. Mercier along with BPA A. Wolters, were performing their assigned Border Patrol duties near Chuichu, Arizona. BPA Mercier and BPA Wolters are part of the Casa Grande Station Disrupt Unit tasked with identifying and apprehending members of human and narcotic smuggling organizations, who often utilize vehicles, in the Casa Grande Area of Responsibility (AOR). Federal Route 15 (FR15) is a federal route that runs through the Tohono O'odham Nation (TON). FR15 has frequently been utilized by smuggling organizations to shuttle and transport illegal aliens and narcotics of the TON and further them into the United States. Smuggling organizations will often drive south onto the TON, pick up the illegal aliens or narcotics and return north of the reservation a short time later. As of recent, the Casa Grande AOR has seen a rise in vehicles dropping off illegal aliens south of the Casa Grande Station immigration checkpoint. Drivers will then wait for the illegal aliens to walk around the checkpoint through the desert and then pick them up at a later time near FR15 to further their

1

travel into the U.S.

3. At approximately 7:00 P.M., BPA Mercier and BPA Wolters were observing vehicle traffic, in unmarked Department vehicles, entering and leaving the TON at the intersection of FR15 and Battaglia Rd. At approximately 7:25 P.M., BPA Mercier observed a gold Chevrolet Equinox head southbound past his location out of his point of view onto the TON. A short time later, he observed the same gold Equinox proceeding northbound on the reservation. At this time, the driver of the Equinox started to tap his brakes and slow down appearing unsure about whether he wanted to go northbound or turn eastbound onto Battaglia Rd. The driver of the Equinox then slowed down and turned eastbound. As the driver was turning, BPA Mercier observed what appeared to be two people in the vehicle. The male driver appeared to be overtly looking away and the passenger appeared to be slouched down in the seat. At this point, BPA Mercier notified BPA Wolters that he had observed the equinox southbound on FR15 and it was now already back northbound in a short period of time. This manner of driving is common for how smuggling organizations operate. The vehicle will often head south on the TON and pick up illegal aliens or narcotic smugglers who are waiting nearby off FR15. The driver will often call when they are in the area and the illegal aliens will come out to the road and get picked up. The driver will then proceed back north off the TON and deliver the illegal aliens to an alternate location.

4. As BPA Mercier pulled out from his location it appeared that the driver started to speed up and accelerate at a high rate of speed, as the distance between them was expanding greatly. As BPA Mercier sped up to catch the driver, he observed the driver speed pass a vehicle traveling eastbound on Battaglia Rd. Approximately 4 miles later, BPA Mercier was able to catch up to the driver and observe the vehicles license plate number. At this time, BPA Mercier ran a registration check on Arizona license plate BZL0354 through Tucson Sector radio. Sector radio advised that the vehicle was a 2005 Chevrolet Equinox registered to Reina Faviola Ordonez at 358 East Rosser Rd., Apartment 294, Phoenix, AZ 85040. As BPA Mercier continued to follow the driver, they approached Sunland Gin Rd. The driver appeared as if he was going to continue eastbound before moving over to the turn lane at the last second. The driver proceeded to turn and travel northbound on Sunland Gin Rd. The driver's mannerisms while leaving the TON, on Battaglia Rd. and turning onto Sunland Gin Rd, seemed to indicate an indecisiveness on where to go.

5. At approximately 7:45 P.M., BPA Mercier performed an investigative traffic stop on the Chevy Equinox BZL0354. As he approached the vehicle from the passenger side, he observed a male driver, male passenger occupant slouching down with his head down, and two males lying down on the back seat with their hands over their eyes/head, in an attempt to hide. All three individuals presented characteristics consistent with illegal aliens who had just recently traveled through the desert. A bag was observed on the floor of the back seat filled with camouflage clothing, which is

4

utilized by illegal aliens as they make their passage through the desert. At this point, BPA Mercier identified himself as a United States Border Patrol agent and asked the driver, later identified as Eric Stacy Todd where he was coming from and he stated the reservation. BPA Mercier asked him if he knew his passengers and he stated no. BPA Mercier asked Todd his citizenship and he stated, "United States". As BPA Mercier was talking to Todd, he realized that he was the subject of a Border Patrol investigation from the previous night. Agents had encountered Todd near the immigration checkpoint on FR 15 and believed he was attempting to pick up illegal aliens near the checkpoint. Tohono O'odham Police Officers took custody of Todd and his vehicle and issued him a trespassing ticket for being unlawfully present on the reservation.

6. BPA Mercier determined all the other occupants in the vehicle, later identified as Javier DeJesus-Gasper, Joaquini Guerro-Eugeno, and one unaccompanied juvenile male as citizens and nationals of Mexico present in the United States illegally without any immigration documents. All subjects were placed under arrest and transported to the Casa Grande Border Patrol Station for further processing.

7. Once at the Casa Grande Border Patrol station, Eric Stacy Todd was read his Miranda warning as to rights and given form I-214 at 10:50 P.M., by BPA M. Bergeron and witnessed by BPA A. Sulli.

8. On October 22, 2017, BPA Bergeron and BPA Sulli interviewed Todd at the Casa Grande Border Patrol Station after he was read his Miranda Rights. Todd

acknowledged that he understood his rights and agreed that he was free from promises or coercion to talk with agents without the presence of an attorney. Below is a synopsis of his interview.

9. Todd's interview began at 10:53 P.M., on October 22, 2017. Eric Todd stated that after taking a wrong turn, he had picked up three people on the side of the road who had flagged him down. He stated that they needed a ride to the Loves gas station on Sunland Gin Rd. in Eloy, Arizona. He originally stated that he did not know they were illegal aliens and arranged (on the side of the road) for them to pay him $20.00 USD for the ride. After approximately 25 minutes of questioning, BPA Bergeron concluded the interview and stopped the recording because he determined that Todd was not being truthful.

10. While BPA Bergeron and BPA Sulli were getting ready to leave the interview room, BPA Sulli mentioned to Todd that they were part of a team that has extensive experience with both alien and drug smuggling activities in the area. BPA Sulli stated further that he did not believe Todd's story. Todd then stated that he was supposed to drop off the three people that he had in his car. Todd admitted to having arranged through the dark web a meet to obtain some "quick cash". Through a friend finding the job on the dark web, Todd was hired to smuggle illegal aliens. In order to obtain details about his job he arranged to meet an "older lady" who gave him a Samsung phone. With that phone, Todd then received directions via text messages to pick up illegal aliens on the side of the road at mile marker 84 of State Route 86 (SR86) on

6

October 21, 2017. Todd stated that he drove them north on FR15 and dropped them off in a small village identified as North Komelic, Arizona. After dropping them off, he was encountered by Border Patrol agents who found Todd driving a Honda Pilot that Todd borrowed from a friend. Todd went on by stating that he had instructions to pick-up the same three people again at mile marker 42 on FR15 the next night, October 22, 2017, the night he was arrested. Todd stated he was going to get paid $1,000 USD in exchange for driving the three illegal aliens to a Walmart in west Phoenix. Todd stated that he had arranged for his payment to be hidden in the parking lot area of that same Walmart.

11. On October 22, 2017, at approximately 11:16 P.M., Supervisory Border Patrol Agent (SBPA) C. Muniz and BPA J. Coman conducted an interview with Javier DeJesus-Gaspar. DeJesus-Gaspar was interviewed as a material witness in the case against Todd. The following narrative is a synopsis of DeJesus-Gaspar's statement.

12. DeJesus-Gaspar claims he is from Puebla, Mexico, and he made arrangements with some friends in Puebla, to help him travel to the United States. DeJesus-Gaspar was unable to identify his friends by name. He did mention that one of the subjects that assisted him was known as Taliban. Taliban is a common moniker that some smugglers use. DeJesus-Gaspar claims that Taliban assisted him in traveling from Puebla to Caborca. He agreed to pay Taliban $4,000 USD to be smuggled to Santa Rosa, California. He claims that Taliban transported him to the United States/Mexico border. DeJesus-Gaspar claims he was placed in a group with two other subjects and a

7

foot guide. He was not able to identify the foot guide by name or moniker.

13. DeJesus-Gaspar claims he walked with a group and illegally entered the United States. They climbed several mountains; however, he was not able to keep pace with his group and was subsequently lost. He claims that he was able to spot a road and walk towards the road from the mountain he was on. Upon arriving at the road, he met up with two other Mexican nationals that agreed to help him travel north into the United States. After joining the two subjects, he claims they walked to a road and waited several hours for a vehicle to transport them north. He claims that when the vehicle arrived, they were ordered to get in, and the driver transported them north. He was not sure where he was taken but he claims the driver mentioned a landmark called 71 or 72. This was possibly a mile marker on SR86. He claims they were told to exit the vehicle and wait for another vehicle to transport them north.

14. In total, DeJesus-Gaspar claims he was transported in three different vehicles. The third vehicle was being driven by Todd. He claims that he believed Todd knew he was an illegal alien based on his condition. He was not able to communicate directly with Todd; however, he did hear Todd state "Oh my God!" when he was being stopped by Border Patrol agents. After entering the vehicle that Todd was driving, DeJesus-Gaspar claims the vehicle never stopped until it was stopped by Border Patrol agents. DeJesus-Gaspar claims Todd was going to transport him to Phoenix, Arizona. Todd was in contact with someone on his phone during the time he was transporting DeJesus-Gaspar.

15. DeJesus-Gaspar was shown a photo lineup with photos of six subjects. DeJesus-Gaspar was unable to identify anyone in the lineup. DeJesus-Gaspar's timeline and description of events did not match the other material witness or the principal's statement. DeJesus was also unable to accurately describe the color of the vehicle he was traveling in at the time of his apprehension.

16. On October 22, 2017, BPA J. Delatorre, as witnessed by BPA E. Castorena, conducted a custodial interview on Joaquini Guerro-Eugeno The following is a written synopsis by BPA Delatorre of the videotaped sworn statement taken before him at the Casa Grande Border Patrol Station.

17. Guerro-Eugeno stated that he was born June 23, 1999. Guerro-Eugeno stated that he is from Puebla, Mexico. Guerro-Eugeno stated that he entered illegally into the United States and that he does not possess any documents that would allow him to stay, visit or live in the United States legally. Guerro-Eugeno stated that he traveled from his home state of Puebla to Mexicali. Guerro-Eugeno stated that in Mexicali, he made arrangements with a group of smugglers. Guerro-Eugeno stated that near the border, he paid $7,000.00 MXN Pesos for the "cuota" (mafia fee). Guerro-Eugeno stated that his group crossed the border approximately 11:00 P.M.

18. Guerro-Eugeno stated that their foot guide explained that the load vehicle was going to arrive and that only three individuals were going to mount the vehicle. Guerro-Eugeno stated that when the vehicle arrived, he was able to see the color of the vehicle. Guerro-Eugeno stated that he thought that the vehicles color was brown or

light brown. Guerro-Eugeno stated that the windows on the vehicle weren't tinted. Guerro-Eugeno stated that the foot guide told them that the driver was going to transport them further north to a building. Guerro-Eugeno stated that he then mounted the vehicle and that he positioned himself on towards the back side of the vehicle.

19. Guerro-Eugeno stated the driver transported them for approximately thirty minutes before they were stopped by Border Patrol. Guerro-Eugeno stated during the drive, the driver did talk to them but he didn't understand what he was saying since he was speaking in a different language. Guerro-Eugeno stated that he believed that the driver spoke English. Guerro-Eugeno stated that when the vehicle came to a stop, he initially did not know that Border Patrol had stopped them. Guerro-Eugeno stated that he only realized that Border Patrol stopped them when he saw individuals with flashlight looking into the vehicle through the windows. Guerro-Eugeno stated that they were then pulled out of the vehicle and placed under arrest.

20. Guerro-Eugeno stated that during the stop, no one ran out of the vehicle and that everyone that was in the vehicle was apprehended, including the driver. Guerro-Eugeno stated when the Border Patrol dismounted everyone out of the vehicle, Guerro-Eugeno was able to see the driver for a couple of seconds. Guerro-Eugeno stated the Border Patrol then placed everyone under arrest and escorted everyone to separate transport vehicles.

21. Guerro-Eugeno stated that once the driver took them to their destination, he was going to then call a number and get an account number. Guerro-Eugeno stated that he

was going to have to then deposit $140,000.00 MXN pesos.

22. Guerro-Eugeno was shown a photo line-up folder with photos of six (6) subjects numbered one to six affixed inside. Guerro-Eugeno was asked that if he recognized a person in the line-up, to explain who that person was and how he knows that person. Guerro-Eugeno was told that he was under no obligation to identify anyone and that it was perfectly fine if he did not recognize anyone in the group of pictures.

23. At first, Guerro-Eugeno identified box number two (2) as the driver, but then changed his mind and selected box number one (1). Guerro-Eugeno stated that both individuals from boxes number one (1) and two (2) looked very similar. Guerro-Eugeno stated that both individuals match the description and that at this point he wasn't sure if the driver was the individual from box one (1) or box two (2). Guerro-Eugeno stated that he wasn't sure if it was one or two because he was only able to see his face for a couple of seconds. Guerro-Eugeno was asked if given the opportunity to physically see him again; he would be able to recognize the driver again. Guerro-Eugeno stated that he thinks so. Guerro-Eugeno then pointed to and circled the photo in box number one (1). Guerro-Eugeno identified the subject in box number one (1) as the male driver of the light brown vehicle. The photo in box number two (2) is a picture of the defendant, Eric Todd. Guerro-Eugeno was not able to identify the driver on the six pack and selected the wrong picture, the picture in box number one (1).

24. Guerro-Eugeno affirmed that all statements were given freely and voluntarily, and

that no threats, coercion, and/or promises were made.

25. Based on the above stated facts, your affiant submits that there is probable cause to believe that on or about October 22, 2017, at or near Eloy, Arizona in the County of Pinal, in the District of Arizona, Eric Stacy Todd, knowingly and with reckless disregard of the fact that certain aliens, Javier DeJesus-Gasper and Joaquini Guerro-Eugeno, had come to, entered and remained in the United States in violation of law, did transport and move said aliens within the United States by means of transportation and otherwise in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii) and Section 1325(a)(2) and Title 18, United States Code, Sections 2.

_____
Signature of Complainant
Albert A. Martinez
U.S. Border Patrol Agent

Sworn to before me and subscribed in my presence, this 23rd day, of October, 2017

_____
Signature of Judicial Officer
Honorable Michelle H. Burns
United States Magistrate Judge

12